# FEDERAL CIVIL PATENT LAWSUIT regarding PATENTS and INVENTOR'S RIGHTS, ENFORCED by SPAIN LEGAL AUTHORITY & SPAIN JURISDICTION over CALIFORNIA LAW

## FEDERAL COURT OF THE UNITED STATES
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

**RUBÉN O. PEÑA,**
**PLAINTIFF**

v.

**HEWLETT–PACKARD INC.** (a Delaware Corporation),
(formerly known as HEWLETT-PACKARD COMPANY),
and **DOES 1–50** (inclusive),
**DEFENDANTS**

FILED
NOV 17 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

C 25 09919 NW

**DOCKET CASE #:** _____
**DATE:** _____
**TIME:** _____
**JUDGE:** _____
**COURT ROOM:** _____

**UNITED STATES FEDERAL DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**
ROBERT F. PECKHAM FEDERAL BUILDING & UNITED STATES COURTHOUSE
**ATTEN: CLERK'S OFFICE**
280 South 1st Street (2nd Floor, Room 2112)
San Jose, CA   95113

TEL:   +1.408.535.5363
WEB:  https://cand.uscourts.gov

**LAWSUIT COMPLAINT FOR:**
(1) BREACH OF CONTRACT (INVENTOR COMPENSATION)
(2) UNJUST ENRICHMENT / RESTITUTION
(3) QUANTUM MERUIT
(4) DECLARATORY RELIEF

(5) ACCOUNTING
(6) VIOLATION OF FOREIGN SUBSTANTIVE LAW (SPANISH INVENTOR-RIGHTS LAW)
(7) FRAUDULENT CONCEALMENT (EQUITABLE TOLLING)
(8) PROMISSORY ESTOPPEL / RELIANCE DAMAGES

**DEMAND FOR JURY TRIAL**

# I. INTRODUCTION

1. This action concerns the systematic failure of Hewlett-Packard Inc. ("HP Inc." or "DEFENDANT") to compensate the inventor and employee, PLAINTIFF Rubén ("PLAINTIFF"), for a major patented technological innovation that generated massive global revenue, dramatic stock-price increases, and almost 20 consecutive years of regained market share (protection from competitors) for HP Inc. across global markets.

2. PLAINTIFF is the Primary Inventor (as one of three named inventors) of U.S. Patent No. 5,680,164A ("the '164 Patent"), filed November 29, 1994; issued October 21, 1997; with expiration on November 29, 2014.

3. The invention idea was conceived in Oregon, then fully developed, fully reduced to practice, fully defended, fully documented, fully disclosed, and fully patented while PLAINTIFF was living and working in Spain, employed by Hewlett-Packard España, S.A. in Sant Cugat del Vallès (Barcelona, Spain), where PLAINTIFF worked in Quality Assurance (QA) — not in R&D, not hired to invent, and not expected to contribute patentable breakthroughs. Nonetheless, PLAINTIFF created a significant and strategically important invention for HP, Inc., far outside the scope of PLAINTIFF's expected job duties.

4. Under Spanish law, including the Spanish Workers' Statute, Spanish Patent Law, and controlling case law from the Supreme Court of Catalunya (Tribunal Superior de Justicia de Cataluña), inventions created outside the normal scope of employment, or beyond expected responsibilities, entitle the employee-inventor to royalties, remuneration, and compensation, particularly where the employer commercially exploits the invention for financial benefit …and/or… uses it to obtain litigation victories.

5. On December 28, 2020, the Supreme Court of Catalunya issued a final decision affirming PLAINTIFF's RIGHT to COMPENSATION and thus issued a "RIGHT to SUE" against the U.S. corporate parent, Hewlett-Packard Inc. (Palo Alto, CA), holding that all compensation disputes and compensation itself must be directed to HP Inc. (Corporate) rather than HP's Spanish subsidiary in Barcelona, Spain, E.U..

6. The Spanish attorneys and courts tolled the statute of limitations repeatedly over many years, with the final tolling order issued November 15, 2024, granting an additional one-year tolling extension. Under choice-of-law, international comity, and California conflict-of-laws rules, these tolling orders apply to PLAINTIFF's U.S. claims.

7. As a result, PLAINTIFF's claims remain timely, and this suit is properly filed on or before November 17, 2025 (following **Fed. R. Civ. P. 6a** extension is granted when a deadline falls on a non-business day weekend of Saturday, November 15, 2025).

8. For two decades, HP Inc. has benefited from PLAINTIFF's invention in the following ways:

    **(a)** Using the invention in two federal lawsuits, (the most significant of which was held in this very San Jose, CA federal court of the Northern District of California), winning both judgments that caused HP's stock price to surge on the NYSE.

    **(b)** Recovering 19.97% annual global market-share from the competition for ~20 consecutive years, directly attributable to PLAINTIFF's invention.

9. Despite these vast substantial economic gains — measured in the billions of dollars — HP Inc. has paid PLAINTIFF zero compensation, zero royalties, and zero contractual or statutory remuneration required under Spanish, E.U. law (and provided zero recognition required per HP Inc. company policy).

10. PLAINTIFF Mr. Rubén O. Peña respectfully moves this Court for a judicial determination of damages owed under (1) **FAIR REMUNERATION UNDER APPLICABLE FOREIGN SPANISH SUBSTANTIVE INVENTOR-RIGHTS LAW**, including (2) **QUANTUM MERUIT**, (3) **PROMISSORY ESTOPPEL / RELIANCE DAMAGES**, (4) **BREACH OF CONTRACT (INVENTOR STATUTORY COMPENSATION)**, (5) **UNJUST ENRICHMENT / RESTITUTION DAMAGES**, (6) **DISGORGEMENT**, (7) **DECLARATORY RELIEF / ACCOUTING**, (8) **STOCK-PRICE APPRECIATION ENRICHMENT / INTEREST**, (9) **FRAUDULENT CONCEALMENT (EQUITABLE TOLLING) I.E. RECOGNITION OF SPANISH TOLLING ORDERS**; (10) **GAINS / PROFITS / INTEREST DERIVED FROM HP'S 19.97% GLOBAL MARKET-SHARE RECAPTURE OVER THE 20-YEAR LIFE OF U.S. PATENT No. 5,680,164A**; and (11) **ALL AVAILABLE LEGAL AND EQUITABLE RELIEF**.

# II. PARTIES

11. PLAINTIFF Rubén Peña is a citizen of the United States, is an Engineer and Inventor who resided in Barcelona, Spain, during the entire period relevant, including evolution of conception, development, defense, reduction to practice, and filing of the '164 Patent. PLAINTIFF currently resides in California for litigation purposes.

12. DEFENDANT Hewlett-Packard Inc. ("HP Inc.") is a Delaware state-registered corporation with its principal Corporate HQ place of business located at 1501 Page Mill Road, Palo Alto, California, USA.

13. DEFENDANTs DOES 1~50 are unknown agents, alter-egos, subsidiaries, officers, or corporate decision-makers responsible for compensation determinations and exploitation of the invention.

# III. JURISDICTION & VENUE

14. This Federal District Court has subject-matter jurisdiction under:

    - **28 U.S.C. § 1331** (grants U.S. federal district courts original jurisdiction over all civil actions that "arise under the Constitution, laws, or treaties of the United States." This is commonly known as "federal question jurisdiction" and is a primary basis for cases to be heard in federal court, including interpretation of U.S. patent law as relevant background);
    - **28 U.S.C. § 1332** (diversity jurisdiction — PLAINTIFF at that time was a foreign resident immigrant living in Barcelona, Spain, E.U. (as a US Citizen) at the time of the invention; DEFENDANT is a Delaware-state registered corporation, but Corporate HQ headquartered in California; amount in controversy exceeds $75,000);
    - **28 U.S.C. § 1367** (federal district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction).

15. This Federal District Court has venue jurisdiction under **28 U.S.C. § 1391(b)** because:

    - HP Inc.'s global compensation and IP-ownership decisions occurred in Palo Alto, CA;
    - HP Inc. – Corporate HQ — the entity ordered by the Spanish Supreme Court to respond — is also headquartered in this Federal District, at this Corporate HQ location of Palo Alto, CA.

16. This Federal Court also has personal jurisdiction over HP Inc. because HP Inc.'s global Corporate HQ: headquarters are here and makes all relevant corporate business decisions in this US Federal District of the Northern District of CA.

# IV. FACTUAL ALLEGATIONS

## A. Employment & Invention Background

17. PLAINTIFF joined Hewlett-Packard España Barcelona Division in the Quality Assurance Department, not in the Research & Development Department. Inventing by PLAINTIFF was not part of PLAINTIFF's job description nor expected by HP.

18. Despite this, PLAINTIFF created and developed a novel and commercially significant technological invention while working for HP, initially in the USA and later in Spain, under the subsidiary HP Española SA., that became the basis for U.S. Patent No. 5,680,164A.

19. The PLAINTIFF Inventor Mr. Ruben Peña was one (of the three employees) who conceived said invention, but as the Principal Engineer in charge of this "family of 13 Inkjet Cartridges", since Mr. Peña was the only one with the technological expertise who developed the vast majority of the important technical heavy part of the innovation, overcoming all the "Objections" of the Examiner of the U.S. Patent and Trademark Office (the "USPTO") in Alexandria, Virginia, USA.

20. In 1995, while the patent application through a submitted draft was still in process, the PLAINTIFF was transferred from HP-USA to HP-Española SA, as an immigrant and permanent resident of Spain, EU where he continued his work as a Quality Engineer and continued the development of the invention under Spanish labor legislation.

21. The PLAINTIFF Inventor Mr. Rubén Peña after being transferred from HP USA to HP Española SA, where he became employed under a local employment contract, contributing to the Spanish Social Security, and under Spanish labor legislation. Despite the relocation, the PLAINTIFF continued the development of his invention from the work environment in Spain, maintaining an active and essential collaboration with HP's legal team in the U.S.A. and also responding to several "Objections" from the Examiner of the U.S. Patent and Trademark Office, the "USPTO", including several initial "rejections" and "Objections" for alleged lack of originality.

22. The successful granting of the patent in 1997 was only possible thanks to the continuous, exhaustive, and exclusive innovative technological technical clarifications of the PLAINTIFF Inventor Mr. Rubén Peña, which he himself drafted and explained from Spain to the legal team of lawyers within HP,

and outside of HP, and to the Examiner of the U.S. Patent and Trademark Office, at the "USPTO".

23. The entire HP legal team (internal and external) would not have been able to overcome the objections of the Examiner of the U.S. Patent and Trademark Office, at the "USPTO", without the important, continuous, exhaustive, and exclusive innovative technological and technical input of the PLAINTIFF Inventor Mr. Rubén Peña, being, as Principal Quality and Manufacturing Engineer of this "family of 13 inkjet products/cartridges" of HP, the only person capable of defending and explaining these various inventive steps in the important technical details necessary.

24. The PLAINTIFF Inventor Mr. Ruben Peña also provided internal documentation to HP and the U.S. Patent and Trademark Office ("USPTO") explaining the operation of the patented system under a synchronous processing model with confirmation of data collected from prototype tests of the invention, ensuring that the "O-Ring-Seal" functioned robustly, an innovative and key element of the invention.

25. However, even so, ironically and unfortunately, the PLAINTIFF Inventor Mr. Rubén Peña was the ONLY inventor (of the 3 registered inventors) who was NOT duly compensated NOR duly recognized at the public General Meeting in June 1998 by the Managing Director Mr. Bernard Meríc of the HP-Barcelona Division (Sant Cugàt, Barcelona, Spain, EU) for this key, innovative, highly important patented invention of incredible financial, strategic and legal value to the HP corporation, and a key invention in HP's patent portfolio ...

    ... thus throughout this entire process, the PLAINTIFF Inventor Mr. Rubén Peña did not receive any compensation, bonus, or much less official recognition for his contribution, neither in the U.S. nor in Spain. Thus, The PLAINTIFF Inventor Mr. Rubén Peña was never COMPENSATED as an inventor nor RECOGNIZED , despite having contributed substantially more than others formally named in the patent application.

    ... where HP benefited significantly in many different ways from this invention mainly created by the PLAINTIFF Quality Control Engineer Mr. Rubén Peña. Furthermore, after the PLAINTIFF, Inventor Mr. Rubén Peña, was neither duly compensated nor duly recognized by the Managing Director of the HP-Barcelona Division, the "Commemorative Patent Plaque" and the "Certification of Invention" ("Letters Patent") were literally transferred from the hands of the Human Resources Lawyers of HP Barcelona Division directly to the lawyer of the PLAINTIFF, Inventor Mr. Rubén Peña (effectively bypassing the Managing Director of the HP-

Barcelona Division, Mr. Bernard Meríc, and Mr. Rubén Peña himself) on Saturday of the weekend when the PLAINTIFF went to collect his belongings from his desk at the HP-Barcelona Division branch after being subjected to a cold-blooded, draconian, triple crucifixion through an unfair and illegal dismissal that left the PLAINTIFF, Mr. Peña, in a precarious and dangerous situation...

...[a total mental health breakdown, under suicide watch by the Spanish government health authorities; in which, moreover, the HP Barcelona Division HR Department deceived Mr. Peña into liquidating his life savings with the promise of supporting him through a promotion offered by the HR Department to purchase a primary residence, during and while he was on medical leave for mental health reasons. Subsequently, immediately upon returning to the workplace, he was summarily dismissed after finally being able to defend himself against the racist and hostile harassment suffered from the Catalan community within his work team in the Quality Department, upon his "precipitous" return to work after his "medical leave," with HP's medical doctors mistakenly and hastily discharging him too soon, leaving the PLAINTIFF, Mr. Peña, in a situation of instant bankruptcy (i.e., AFTER his mortgage was approved, but BEFORE he could sign the deed to the property); And if all this were not enough, to top it all off, the HR Department of HP: Barcelona Division withdrew the promotional offer to purchase his new home, leaving the PLAINTIFF Mr. Peña literally in "instant bankruptcy" and unable to work anywhere else in Europe since his Residence VISA and Employment VISA in Spain, Europe was exclusively and only with HP-Barcelona Division, without any right to work for any other company in all of Europe; and finally being summarily dismissed after the PLAINTIFF, Inventor Mr. Rubén Peña, was literally kicked out right in the middle of his weekly presentation to his team, in a humiliating and disgraceful manner, with atomic precision, leaving him instantly bankrupt, just two weeks before the Managing Director, Mr. Bernard Meríc, of the HP-Barcelona Division, presented him with the "Patent Commemorative" plaque and the "Invention Certification" document ("Letters Patent") during the public General Assembly in June 1998...

...violating the fundamental protocol of respect, common professional courtesy, and public recognition towards the Inventor Mr. Rubén Peña, being the ONLY inventor (of the 3 registered inventors) who was NOT duly compensated NOR duly recognized at the public General Assembly of June 1998 by the General Manager Mr. Bernard Meríc of the HP-Barcelona Division!! Previously, this invention was officially patented by Hewlett-Packard on October 21, 1997, as U.S. Patent No. 5,680,164A.

26. The invention that is the subject of this lawsuit was not the result of a direct or contractual commission from HP, but rather the product of the innovative and technical skills of the PLAINTIFF, Engineer and Inventor Rubén Peña, developed within the scope of his general duties as a Quality Engineer. It is, therefore, a mixed labor invention under Spanish law.

27. The invention was entirely developed in Spain, including:

   - continued conception and evolution,
   - engineering work,
   - prototype creation and functional feasibility validation,
   - testing, data collection/analysis and verification/qualification,
   - reduction to practice,
   - internal disclosure to HP Inc. in Spain and Oregon,
   - and coordination with HP's IP Legal Teams (*internal* in HP-Spain, and HP-Oregon in the USA; and *external* Legal Firm in Colorado in the U.S.A.) as well as extremely close coordination with the U.S. Patent Examiner of the USPTO in the defense and substantiation of uniqueness & novelty compared to "prior art", and proof of concept for global Patent filing and registration including in: U.S.A., Germany, Great Britain, South Korea, and Hong-Kong (China) ... covering several key global geographic business and jurisdictional regions.

28. Under Spanish Law, inventions created outside the scope of employment duties entitle the Employee to mandatory compensation based on the Employer's resulting exploitation and commercial benefit. Spanish legislation, specifically Article **17.2 of Law 24/2015 on Patents,** recognizes the right of the PLAINTIFF, Engineer- Worker- Inventor Mr. Rubén Peña , to participate in the profits obtained by the company when dealing with inventions created by the worker but not directly commissioned or expected by him . This right is universal, common, and well-recognized internationally by several countries as an equitable criterion in well-established jurisprudence, and has been accepted historically on several occasions by courts in cases involving applicable foreign law.

### Importance of Article 17 of Spanish Patent Law 24/2015

29. The Spanish text strongly justifies the financial compensation in **Article 17.2 of Law 24/2015** , which refers to a **"participation in the profits"** obtained by the company. This **has already been mentioned** in the American claim, but it can be **further emphasized** by stating that **it is an internationally recognized legal criterion** and acceptable as **a source of applicable foreign substantive law** .

30. Since 2003, the PLAINTIFF, Engineer Inventor Rubén Peña, attempted on several occasions to obtain voluntary recognition or compensation from HP, without success, encountering a systematic and persistent refusal from the company.

31. On January 24, 2004, the PLAINTIFF, Engineer and Inventor Mr. Peña, initiated formal labor conciliation proceedings before the Spanish authorities, seeking recognition and compensation for his inventive contribution. This and subsequent legal actions interrupted the statute of limitations under Spanish law. These actions reflect the PLAINTIFF's continued diligence in defending his rights and demonstrate that the claim was pursued in good faith within the relevant time frame. The interruption of the statute of limitations under Spanish law must be taken into account by this Federal Court, in accordance with the applicable principles of private international law.

## B. Filing and Use of U.S. Patent No. 5,680,164A

32. The '164 Patent:

    - Filed:    Nov. 29, 1994
    - Issued:   Oct 21, 1997
    - Expired:  Nov. 29, 2014

33. HP Inc. used PLAINTIFF's invention globally to re-capture 19.97% of previously lost market-share from global "refill" competitors, as well as also protect its major commercial product families [13 Black TIJ 2.0 InkJet Cartridges] that were in-fact the most significant "cash cow" for the corporation as a whole generating ~75% of all of HP Inc.'s overall _yearly global profits_ for ALL of the corporation of HP Inc. worldwide _for the long-run of ~20-years_ – a substantive part of its history of existence.

34. HP Inc. also used the '164 Patent to win two federal lawsuits (one occurring right here in San Jose, CA in this very Federal Court in the Northern District of California), both securing rulings in HP Inc.'s favor that caused HP's Inc.'s stock price to surge on the NYSE … and also … simultaneously allowed HP Inc. to regain and re-capture 19.97% of its previously lost global market share from the competition (regaining its dominance in the global market with a massive overall market share of over +90%) and hold-on to that global market share annually, year-after-year, for almost the entire life of the Patent for almost ~20 years.

35. The invention's global economic added value, over this ~20-year life span timeframe, is quite substantially significant, measured in the billions of dollars.

## C. Spanish Supreme Court Ruling — "RIGHT to SUE" HP Inc. Corporate in California, USA ..and.. Right to Compensation for Inventor

36. On December 28, 2020, the "Tribunal Superior de Justicia de España" issued a final judgment ruling that:

    - **(a)** The invention was made in Spain.
    - **(b)** Spanish law governs PLAINTIFF (as 1 of 3 inventors) is entitled to compensation rights of 1/3 = "33 1/3"% of all global profits generated and/or recaptured and/or protected by this Patent Invention over its 20-year lifespan.
    - **(c)** HP Inc. Corporate (Palo Alto, CA) — not HP Inc. Spain — is the proper DEFENDANT for all compensation and remuneration claims.
    - **(d)** PLAINTIFF Inventor retains a "RIGHT to SUE" HP Inc. Corporate of Palo Alto, CA for just, fair, and equitable Right to Compensation for his invention.

37. This constitutes a foreign judgment entitled to recognition under International Comity Principles (see precedent of **"Hilton v. Guyot" page # 159-U.S.-113 (1895)**).

## D. Statute of Limitations & Tolling

38. Spanish attorneys submitted motions to the Spanish Courts who issued multiple tolling orders over many years.

39. Most recently, the Spanish court issued a November 15, 2024 order granting an additional one-year tolling extension.

40. Under:

    - California Conflict-of-Laws rules;
    - Spanish Substantive Law;
    - International Comity;
    - Restatement (Second) of **Conflict of Laws statutes § 142, 6;**

- and Federal Equitable Tolling Principles (Ninth Federal Circuit),

… the Spanish tolling orders are valid and enforceable in this action.

**41.** The "Statute of Limitations", therefore, expires November 15, 2025.

**42.** However, because that date falls on a Saturday (weekend non-business day), then under **Fed. R. Civ. P. 6(a)(1)(C)**, the deadline automatically extends to Monday, November 17, 2025 @ 11:59pm.

**43.** This action is therefore timely.

# V. CAUSES OF ACTION

## COUNT 1 — Breach of Contract (Express & Implied)

33. PLAINTIFF incorporates all preceding allegations.

34. HP Inc. as well as HP Spain promised, explicitly and implicitly, to compensate as well as recognize Employees for inventions, pursuant to Spanish law and HP's Global Employment Policies.

35. HP Inc. as well as HP Spain breached these obligations by failing to recognize nor compensate PLAINTIFF any remuneration at all whatsoever.

36. Damages exceed $6.9 billion (reduced by 1/3 for the PLAINTIFF as (1-of-3) "one of three" Inventors named on the Patent), hence 1/3 of all global profits and added value over the 20-year lifespan of the Patent Invention for the PLAINTIFF (living and working in Europe at the time) … further reduced again by another 1/3 per Spanish Patent Law referring to note 25(b) above, subject to proof.

## COUNT 2 — Unjust Enrichment / Restitution

37. HP Inc. was enriched by PLAINTIFF's invention through:

    - Direct Product Revenues and Profits;
    - Federal Litigation Victories;
    - HP Inc.'s Stock-Price Appreciation on the NYSE;
    - Regained / **Recaptured** Global market share.

38. Retention of these benefits without compensation is inequitable.

## COUNT 3 — Quantum Meruit

39. PLAINTIFF conferred substantial benefits on HP Inc. beyond the scope of employment. Equity requires compensation.

## COUNT 4 — Declaratory Relief

**40.** A judicial declaration is required confirming:

- Spanish law governs compensation;
- Spanish tolling orders apply;
- PLAINTIFF's claims are timely;
- HP Inc. owes remuneration under Spanish inventor-rights law.

## COUNT 5 — Accounting

**41.** PLAINTIFF seeks from DEFENDANT a detailed accounting of all profits generated by the invention, including litigation victories attributable to the patent.

## COUNT 6 — Violation of Spanish Substantive Inventor-Rights Law

**42.** Spanish law mandates compensation for inventions beyond normal job duties. HP Inc. violated these obligations.

## COUNT 7 — Fraudulent Concealment (Equitable Tolling)

**43.** HP Inc. concealed the full revenue generated by PLAINTIFF's invention, preventing earlier filing in the U.S. Equitable tolling applies.

## COUNT 8 — Promissory Estoppel

44. HP Inc. made representations regarding fairness, remuneration systems, and recognition that PLAINTIFF relied upon but never received.

# VI. PRAYER FOR RELIEF

PLAINTIFF seeks:

1. Compensatory damages (to be proven at trial).
2. Equitable restitution and disgorgement.
3. A full accounting.
4. Declaratory relief.
5. Pre- and post-judgment interest.
6. Costs of suit.
7. Any further relief deemed just and proper.

## VII. JURY DEMAND

The PLAINTIFF, Engineer Inventor Rubén O. Peña, hereby requests a jury trial on all matters that may be judged by jury.

**Respectfully presented,**

*Rubén O. Peña*

**Rubén O. Peña
November 17, 2025
PLAINTIFF represents himself ("Pro Se", not yet represented by an Attorney )**

RECEIVED
2025 NOV 17 17:30
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

## IX. EXHIBITS LIST (TO INCLUDE IN WORD)

Exhibit 1 — U.S. Patent No. 5,680,164A front page
Exhibit 2 — Spanish Supreme Court (Catalunya) "RIGHT to SUE" ruling (Dec 28, 2020)
Exhibit 3 — Spanish tolling order (Nov 15, 2024)
Exhibit 4 — Employment documents showing QA role (not R&D)
Exhibit 5 — HP Inc. litigation filings referencing the '164 Patent
Exhibit 6 — Market share data showing 19.97% recovery
Exhibit 7 — Financial evidence of HP Inc. stock-price impacts

## VIII. VERIFICATION

I, Rubén, verify under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge.

Date: Monday Nov. 17, 2025

Signature: Rubén O. Peña

Rubén O. Peña

CONTACT INFO:

iPhone: +1.650.448.9088

TEXT: +1.650.448.9088

Yahoo!: ruben_pena_2001@yahoo.es

MAILING ADDRESS: (only)

Atten: Mr. Rubén Peña
4309 Collins Court (Unit #4)
Mountain View, CA 94040

RECEIVED
2025 NOV 17 17:30
CLERK, US DISTRICT COURT
NO. DIST. OF CA.