UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUBÉN O. PEÑA,

Plaintiff,

v.

HEWLETT-PACKARD INC.,

Defendant.

Case No. 25-cv-09919-NW

**ORDER SCREENING AND DISMISSING FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

Re: ECF No. 17

Self-represented Plaintiff Rubén O. Peña filed a complaint and an application for leave to appear *in forma pauperis* ("IFP"). ECF Nos. 1, 2.[1] The Court granted the IFP application, but dismissed the complaint pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief can be granted and for failure to comply with Fed. R. Civ. P. 8(a)(2)'s requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" ECF No. 7.

Peña has since filed a first amended complaint ("FAC"). ECF No. 17. Having reviewed the FAC pursuant to 28 U.S.C. § 1915(e), the Court finds it again fails to state a claim. Because Peña has had an opportunity to cure the deficiencies of his complaint yet failed to do so, the Court DISMISSES the FAC WITHOUT LEAVE TO AMEND.

## I. BACKGROUND

### A. Allegations of the FAC

In 1990, Peña began working for Hewlett-Packard Company—predecessor to Defendant Hewlett-Packard Inc. ("HP")—in Corvallis, Oregon "as an engineer involved in the development

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

of inkjet printing technology." FAC at 3. Peña alleges that he "contributed substantially to the conception and development of the technology" embodied in U.S. Patent No. 5,680,164 (the "'164 patent") while he was working in the United States and in Spain. *Id.* at 2, 4. Peña is a named inventor of the '164 patent. *Id.* at 2.

HP obtained the rights to the '164 patent and "commercially exploited the patented technology in connection with its inkjet cartridge business." *Id.* at 4. According to Peña, "HP's inkjet cartridge business generated billions of dollars in revenue during the years in which the patented technology was commercially exploited[,]" but Peña "never received compensation for the value created by the invention." *Id.*

**B. Procedural History**

On November 17, 2025, Peña filed a complaint against Defendant Hewlett-Packard, Inc. ("HP") titled "Federal Civil Patent Lawsuit Regarding Patents and Inventor's Rights, Enforced by Spain Legal Authority & Spain Jurisdiction over California Law." ECF No. 1. The complaint sought "a judicial determination of damages owed under (1) Fair Remuneration Under Applicable Foreign Spanish Substantive Inventor-Rights Law, . . . (2) Quantum Meruit, (3) Promissory Estoppel / Reliance Damages, (4) Breach Of Contract (Inventor Statutory Compensation), (5) Unjust Enrichment / Restitution Damages, (6) Disgorgement, (7) Declaratory Relief / Accounting, (8) Stock-Price Appreciation Enrichment / Interest, (9) Fraudulent Concealment (Equitable Tolling) I.E. Recognition Of Spanish Tolling Orders; (10) Gains / Profits / Interest Derived From Hp's 19.97% Global Market-Share Recapture Over The 20-Year Life Of U.S. Patent No. 5,680, 164a; And (11) All Available Legal And Equitable Relief." *Id.* ¶ 10 (emphasis and capitalization omitted).

The Court dismissed the FAC on grounds that it failed to give HP fair notice of the claims asserted against it. ECF No. 7. The Court granted Peña leave to amend to allege:

> 1. The specific laws or rights HP allegedly violated, including the legal elements that establish each cause of action;
>
> 2. For each law or right, the specific factual allegations that connect HP with the alleged wrongdoing, including the dates, names of individuals involved, and what each individual did;

3. How Peña was harmed because of HP's action or inaction; and

4. The relief sought.

*Id.* at 5.

Peña's FAC asserts four claims for (1) declaratory relief, (2) unjust enrichment, (3) quantum meruit, and (4) equitable accounting and disgorgement. FAC at 5–6. Peña seeks a judicial declaration of his "rights arising from his contribution to the patented invention," an equitable accounting of revenues and profits derived from the '164 patent, restitution, damages, and attorneys' fees and costs. *Id.* at 7.

## II. LEGAL STANDARD

When a district court grants *in forma pauperis* status, the court must screen the complaint and dismiss the action if it "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 & n.7 (9th Cir. 2000) (screening requirement of § 1915(e) applies to all *in forma pauperis* complaints). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). As such, the complaint must allege facts that plausibly establish each defendant's liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the Court must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the plaintiff." *Watison*, 668 F.3d at 1112 (citation omitted). The Court must also "construe a pro se plaintiff's pleadings liberally and afford the petitioner the benefit of any doubt." *Id.* (citation modified). But the Court "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992), *as amended* (Oct. 9, 1992).

A complaint must also comply with Federal Rule of Civil Procedure 8, which requires the

complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The failure to comply with Rule 8 is a basis for dismissal that is not dependent on whether the complaint is without merit. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Accordingly, even claims that are not on their face subject to dismissal under Rule 12(b)(6) may still be dismissed for violating Rule 8(a). *Id.*

## III. DISCUSSION

### A. HP's Alleged Wrongdoing

The FAC again fails to allege any wrongdoing by HP. Although Peña alleges that "HP obtained the ['164] patent rights[,]" he does not "challenge [HP's] ownership of the patent[.]"[2] FAC at 4, 6. There are otherwise no facts that show why he, as a non-patent holder, is entitled to any royalties or profits arising from the claimed invention of the '164 patent. *See Albright v. Teas*, 106 U.S. 613, 617 (1883) ("The appellee, before the commencement of the suit, sold and transferred to Albright and Cahoone all his title and interest in the inventions covered by his patents. The transfer was absolute and unconditional. No right, therefore, secured to the appellee in the patent by any act of congress remained in him. He had no right to prosecute any one for infringements of his patents, or to demand damages therefor or an account of profits."). Put another way, Peña fails to allege facts that HP wrongfully withheld payments to him.

Absent such facts, Peña's claims—each of which is predicated on HP's allegedly wrongful withholding of profits—fail. *See* FAC at 6 ("Plaintiff seeks a declaration recognizing his rights arising from his inventive contribution and his entitlement to equitable compensation."); *id.* ("Retaining those [economic] benefits without compensating Plaintiff constitutes unjust enrichment."); *id.* ("Equity requires that Plaintiff receive reasonable compensation.").

### B. Statute of Limitations

It also is not clear from the face of the FAC that Peña's claims are timely. The FAC purports to invoke the delayed discovery rule by alleging that Peña "could not determine the

---

[2] A search of the U.S. Patent and Trademark Office's Assignment Center shows that on November 23, 1994, Peña assigned his rights to the '164 patent to HP. The FAC omits any mention of this assignment.

commercial value of the invention without access to HP's internal financial information" and that he "only later became aware of the scale of HP's cartridge market and the potential economic value generated by the patented technology." FAC at 5. This is insufficient.

"The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). To rely on the delayed discovery rule, Peña "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (citation modified).

There are no facts as to when and how Peña discovered the alleged wrongdoing. This, in and of itself, is fatal. But the allegations also suggest that Peña knew that HP was profiting from the '164 patent; he simply was not aware how much revenue the patent was generating. *See* FAC at 5 ("Plaintiff only later became aware of the scale of HP's cartridge market and the potential economic value generated by the patented technology."). The focus of the delayed discovery rule is the plaintiff's awareness of the injury—not when the plaintiff realizes the scale of the injury. *See Fox*, 35 Cal. 4th at 808 ("[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation.").

Without plausibly pleading the applicability of the delayed discovery rule, Peña fails to show that his claims are timely. "California law imposes a two-year statute of limitations on 'any action upon a contract, obligation or liability not founded upon an instrument of writing.'" *Stanford Health Care v. USAble Mut. Ins. Co.*, 548 F. Supp. 3d 909, 912 (N.D. Cal. 2021) (quoting Cal. Civ. Proc. Code § 339). This includes claims for unjust enrichment and quantum meruit. *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019); *Vishva Dev, M.D., Inc. v. Blue Shield of California Life & Health Ins. Co.*, 2 Cal. App. 5th 1218, 1223 (2016). Thus, at the latest, Peña's unjust enrichment and quantum meruit claims must have accrued no later than November 17, 2023. There are no allegations to suggest that is the case. This is particularly true given that any benefits HP received under the '164 patent presumably ended on November 29, 2014, when the patent expired. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed.

Cir. 2015) ("'[T]he rights flowing from a patent exist only for the term of the patent.'") (quoting *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994)).[3] Peña alleges no facts as to why he would be entitled to payments nearly a decade after the '164 patent expired, and HP could no longer enforce it.

## IV. CONCLUSION

Peña has had an opportunity to cure the deficiencies the Court previously identified but, for the reasons stated above, the FAC remains deficient. The Court therefore DISMISSES the FAC WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED.**

Dated: July 24, 2026

Noël Wise
United States District Judge

[3] The application for the '164 patent was filed on November 29, 1994. *See* U.S. Appl. No. 346/561. Absent any patent term adjustments, the '164 patent presumably expired 20 years later, on November 29, 2014. *See* 35 U.S.C. § 154(a)(2) ("[S]uch grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States . . ."). Peña appears to be aware of this. Although the FAC does not allege the expiration date of the '164 patent, Peña's initial complaint alleged that the '164 patent expired on November 29, 2014. ECF No. 1 ¶ 2.